UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**MEGA VAPE, LLC,**

          **Plaintiff,**

**v.**                                           **Case No. SA-20-CV-0454-JKP**

**THE CITY OF SAN ANTONIO,**

          **Defendant.**

## MEMORANDUM OPINION AND ORDER

The Court has under consideration *Plaintiff Mega Vape, LLC's Motion for Temporary Restraining Order* (ECF No. 3); Defendant's response (ECF No. 4); Plaintiff's Reply (ECF No. 5); and Plaintiff's Supplement to Motion (ECF No. 6). Because the review of the motion and underlying complaint reveals that subject matter jurisdiction is lacking in this case, the Court remands the case and denies the motion as moot.

## I. EMERGENCY RESPONSES TO COVID-19

This case concerns various executive orders and emergency declarations that federal, state, and local governments have issued the past few weeks to address the tremendous threat to the public health and safety posed by the COVID-19 pandemic.

Texas law grants the Governor authority to "issue executive orders," which "have the force and effect of law," Tex. Gov't Code Ann. § 418.012, and permits designated local officials to act as emergency management directors, Tex. Gov't Code Ann. § 418.1015(a). Generally, such director "serve[] as the governor's designated agent in the administration and supervision of duties . . . [and] may exercise the powers granted to the governor under [Chapter 418] on an appropriate local scale." *Id*. § 418.1015(b). And in general, "the presiding officer of the governing body of a political subdivision may declare a local state of disaster" but any "declaration of local disaster may not be

continued or renewed for a period of more than seven days except with the consent of the governing body of the political subdivision." *Id*. 418.108(a) and (b).

Due to COVID-19, "the President of the United States declared a national state of emergency and the Governor of Texas declared a state of disaster" on March 13, 2020. *Russell v. Harris Cty., Tex.*, No. CV H-19-226, 2020 WL 1866835, at *2 (S.D. Tex. Apr. 14, 2020). Through Executive Order GA-08 signed by Governor Abbott on March 19, 2020, Texas recognized COVID-19 as "a public health disaster with the meaning of Chapter 81 of the Texas Health and Safety Code" and imposed various restrictions not specifically relevant here. By its terms, "[a]ll critical infrastructure will remain operational . . . and government entities and businesses will continue providing essential services."

That same day, the National Cybersecurity and Infrastructure Security Agency ("CISA") issued Version 1.0 of its Guidance on the Essential Critical Infrastructure Workforce: Ensuring Community and National Resilience in COVID-19 Response. That document lists sixteen essential critical infrastructure sectors, including "Commercial Facilities," which arguably covers Plaintiff's business. While listing "Commercial Facilities" as a critical sector, the CISA provided no guidance as to the type of workers that may provide essential services for Commercial Facilities even though the CISA identified worker types for most other critical sectors.

On March 23, 2020, Defendant issued Emergency Order #5 and declared a public health emergency regarding COVID-19. In an attachment to that order, the City imposed various restrictions, including the closing of all businesses other than "Exempted Businesses" as defined in the attachment. Among other things, "Exempted Businesses" include "Household Staples Retail," which in turn includes "business that supply products needed for people to work from home." "Exempted Businesses" also include "[a]ll business and operations necessary to the operations and

maintenance of the 16 critical infrastructure sectors as identified by [CISA]" in Version 1.0 of its guidance. On March 26, 2020, through City Ordinance 2020-03-26-0217, Defendant extended the declaration of public health emergency (Emergency Order #5) to April 9, 2020. It also provided that a violation of the declaration would be punishable by a fine consistent with state law.

On March 28, 2020, CISA issued Version 2.0 of its guidance, which lists the same sixteen essential critical infrastructure sectors as Version 1.0.[1] Among other worker-types listed for Commercial Facilities, Version 2.0 lists: "Workers in hardware and building materials stores, consumer electronics, technology and appliances retail, and related merchant wholesalers and distributors - with reduced staff to ensure continued operations." But as stated by CISA, the "list of identified essential critical infrastructure workers is intended to be overly inclusive reflecting the diversity of industries across the United States."

In Executive Order GA-14 signed on March 31, 2020, the Governor of Texas recognized the CISA publication as "an advisory list of critical-infrastructure sectors, workers, and functions that should continue during the COVID-19 response." He further recognized that "all government entities and businesses should be allowed to continue providing essential services during the COVID-19 disaster, and all critical infrastructure should be allowed to remain operational." The Executive Order also defined "Essential services" as "consist[ing] of everything listed by the U.S. Department of Homeland Security in its Guidance on the Essential Critical Infrastructure Workforce, Version 2.0, plus religious services conducted in churches, congregations, and houses of worship." The Executive Order further states:

> In providing or obtaining essential services, people and businesses should follow the Guidelines from the President and the CDC by practicing good hygiene, environmental cleanliness, and sanitation, implementing social distancing, and working from home if possible. In particular, all services should be provided through remote

---

[1]CISA issued Version 3.0 on April 17, 2020, but that version is not placed at issue in this case although it does highlight how quickly responses to COVID-19 may change.

telework from home unless they are essential services that cannot be provided through remote telework. . . .

. . .

This executive order shall supersede any conflicting order issued by local officials in response to the COVD-19 disaster, but only to the extent that such a local order restricts essential services allowed by this executive order or allows gatherings prohibited by this executive order. I hereby suspend Sections 418.1015(b) and 418.108 of the Texas Government Code, Chapter 81, Subchapter E of the Texas Health and Safety Code, and any other relevant statutes, to the extent necessary to ensure that local officials do not impose restrictions inconsistent with this executive order, provided that local officials may enforce this executive order as well as local restrictions that are consistent with this executive order.

## II. COVID-19 PANDEMIC

At the outset, the Court notes that it is undeniable that the COVID-19 pandemic poses a tremendous threat to public health and safety. *See In re Abbott*, ___ F.3d. ___, No. 20-50264, 2020 WL 1685929, at *2 (5th Cir. Apr. 7, 2020) ("As all are painfully aware, our nation faces a public health emergency caused by the exponential spread of COVID-19 . . ..."). This threat is apparent from the federal CISA guidance, executive orders of the State of Texas, and the City's emergency order. "In Texas, the virus has spread rapidly over the past two weeks and is predicted to continue spreading exponentially in the coming days and weeks." *Id.* As both the Western District of Texas and the Fifth Circuit have "acknowledged, Texas faces its worst public health emergency in over a century." *Id.* (internal quotation marks and alterations omitted). Through *In re Abbott*, the Fifth Circuit has noted:

> the current global pandemic has caused a serious, widespread, rapidly-escalating public health crisis in Texas. [An] interest in protecting public health during such a time is at its zenith. In the unprecedented circumstances now facing our society, even a minor delay in fully implementing the state's emergency measures could have major ramifications because, as the evidence shows, an exponential increase in COVID-19 cases is expected over the next few days and weeks. It is hard to imagine a more urgent situation.

2020 WL 1685929, at *15 (citation and internal quotation marks omitted); *accord In re Abbott*

[*Abbott II*], No. 20-50296, 2020 WL 1911216, at *18 (5th Cir. Apr. 20, 2020) (quoting *In re Abbott*).

In *Abbott II*, the Fifth Circuit recognized that between April 7 and April 20, "Texas COVID-19 cases, hospitalizations, and deaths more than doubled." 2020 WL 1911216, at *1. This crisis is fluid and the rapidity of its changes require quick action at every level of the government. Each level must weigh the needs of the many against individual needs. Each level must weigh the various risks in formulating their responses. And, given Executive Order GA-14 and the suspension of some statutes therein, the Governor has constrained local responses somewhat.

The COVID-19 pandemic has brought century-old precedent back into the limelight. *See In re Abbott*, 2020 WL 1685929, at *1 (citing *Jacobson v. Commonwealth of Mass.*, 197 U.S. 11 (1905)). As stated in that venerable Supreme Court decision,

> in every well-ordered society charged with the duty of conserving the safety of its members the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand.

*Jacobson*, 197 U.S. at 29; *accord In re Abbott*, 2020 WL 1685929, at *6 (quoting text). Unquestionably, "individual rights secured by the Constitution do not disappear during a public health crisis, but the [Supreme] Court [has] plainly stated that rights could be reasonably restricted during those times." *In re Abbott*, 2020 WL 1685929, at *6 (citing *Jacobson*, 197 U.S. at 29).

> [W]hen faced with a society-threatening epidemic, a state may implement emergency measures that curtail constitutional rights so long as the measures have at least some "real or substantial relation" to the public health crisis and are not "beyond all question, a plain, palpable invasion of rights secured by the fundamental law."

*Id*. at *7 (quoting *Jacobson*, 197 U.S. at 31). Further, "the police power of a state, whether exercised directly by the legislature, or by a local body acting under its authority, may be exerted" in emergency circumstances. *Jacobson*, 197 U.S. at 38.

It is against this backdrop that this Court proceeds further into the dispute between the parties here. The dispute pits a private business against a city municipality with each professing to have the authority of the State of Texas behind their actions. Both the City and the State have issued emergency responses to the pandemic that impact small businesses and their owners.

## III. BACKGROUND LEADING TO THIS LITIGATION

On March 29, 2020, the City advised Plaintiff that it deemed Plaintiff's business non-essential. After Plaintiff violated emergency restrictions several times, the City revoked Plaintiff's Certificate of Occupancy on April 7, 2020, and threatened to turn off utilities at its business location. The letter of revocation states that (1) the City's Declaration of Public Health Emergency Order was enacted into law pursuant to City Ordinance 2020-03-26-0217 and requires closure of all non-essential businesses; (2) Executive Order GA-14 extended closure of all non-essential businesses until April 30, 2020; (3) Plaintiff's "business has been deemed non-essential"; (4) Plaintiff had violated the City Ordinance nine times between March 27 and April 6, 2020; (5) Plaintiff's Certificate of Occupancy was revoked due to these repeated violations and Plaintiff's business building was deemed "unfit for human occupancy"; (6) Plaintiff was to immediately vacate the premises subject to a fine for non-compliance; (7) utilities could be disconnected; and (8) Plaintiff could appeal the revocation decision to the Board of Adjustment.

In response to the revocation letter, Plaintiff sent a letter demanding reinstatement of the Certificate of Occupancy on grounds that the revocation would be devastating to its business and customers. Upon the City's refusal to reinstate the Certificate of Occupancy, Plaintiff brought suit against the City and sought a temporary restraining order in state court. Its original complaint asserts jurisdiction under Article I, Section 19 of the Texas Constitution and 42 U.S.C. § 1983. It asserts three claims: (1) interference with business contracts; (2) interference with prospective

business relations; and (3) denial of due process under Article I, Section 19 of the Texas Constitution. Because Plaintiff invoked § 1983, the City removed the action to federal court.

On April 15, 2020, Plaintiff moved for a temporary restraining order or preliminary injunction. It seeks to enjoin Defendant from revoking its Certificate of Occupancy or otherwise interfering with its business. Of course, time is of the essence with such a motion, especially when faced with emergency measures at issue in this case. The Court thus dove tenaciously into the legal issues and with each related briefing, gained additional information from which to fashion an appropriate order. However, as the Court entered the home stretch, a cautionary jurisdictional flag rose from the court record halting further progress on other legal issues and compelling a deeper review of the jurisdictional basis for this action. Although the motion for injunction is now fully briefed and ripe for ruling, the Court must first assure itself that it has jurisdiction over this action before addressing the motion.

## IV. JURISDICTION

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "Jurisdiction is essentially the authority conferred by Congress to decide a given type of case one way or the other." *Hagans v. Lavine*, 415 U.S. 528, 538 (1974). Courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

"Original jurisdiction over the subject matter is mandatory for the maintenance of an action in federal court." *Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 693 (5th Cir. 1995). Parties "may neither consent to nor waive federal subject matter jurisdiction." *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999). The Fifth Circuit has long held that, under Fed. R. Civ. P. 12(h)(3), the

federal courts "have the responsibility to consider the question of subject matter jurisdiction *sua sponte* if it is not raised by the parties and to dismiss any action if such jurisdiction is lacking." *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985). Even more pertinent, 28 U.S.C. § 1447(c), applicable to actions removed from state court, provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

Defendant removed this case to this Court on the basis of federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiff stated in a jurisdictional paragraph of its state court petition that suit was brought under 42 U.S.C. § 1983 for an alleged constitutional violation. *See* Def. Notice of Removal (ECF No. 1) ¶ 1; Pl.'s Orig. Pet. (ECF No. 1-1) ¶ 6. As the party seeking the federal forum in a removed action, "[t]he defendant bears the burden of demonstrating that a federal question exists." *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007).

For federal question jurisdiction to exist, "the face of the complaint" must show "some substantial, disputed question of federal law." *Id*. (citation omitted). Because plaintiffs are masters of their complaints, any "determination that a cause of action presents a federal question depends upon the allegations of the plaintiff's well-pleaded complaint." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001) (citation omitted). Plaintiffs often have "a choice between federal and state law claims" and in those circumstances, they "may proceed in state court on the exclusive basis of state law, thus defeating the defendant's opportunity to remove." *Id*. (citation omitted). Therefore, "to support removal, the defendant must show that a federal right is an essential element of the plaintiff's cause of action." *Id*.

Examination of Plaintiff's well-pleaded complaint reveals three asserted claims, a due process claim asserted specifically under the Texas Constitution and two other claims under Texas

law. At no point does Plaintiff refer to any provision of the United States Constitution. From Plaintiff's asserted claims or causes of action, there is no question of federal law. It thus appears to the Court that federal subject matter jurisdiction is lacking in this case.

But Plaintiff does mention 42 U.S.C. § 1983 in a jurisdictional paragraph of its complaint. "Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). Typically, proceeding under § 1983 is sufficient to provide federal question jurisdiction through 28 U.S.C. § 1331. Plaintiff, however, does not allege any claim under federal law or the United States Constitution. It asserts its constitutional violation only under the Texas Constitution. Such a constitutional claim is state claim, not a federal one. *See Starrett v. City of Richardson, Tex.*, No. 3:18-CV-191-L, 2018 WL 3802038, at *2 (N.D. Tex. Aug. 10, 2018), *aff'd*, 766 F. App'x 108 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 122 (2019).

Even when there is a purported federal claim asserted, courts may dismiss for lack of jurisdiction when the claim is "immaterial and made solely for the purposes of obtaining jurisdiction" or is "insubstantial and frivolous." *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir.1981). Here, Plaintiff does not even purport to assert a federal claim; it merely references § 1983 in a jurisdictional paragraph. Relying on *Williamson*, one court has found that a "mere reference" to a statute, like § 1983, provides no basis for jurisdiction. *Wells v. Womens Clinic of Shreveport*, No. CIV A 06-1371, 2006 WL 2883039, at *1 (W.D. La. Sept. 1, 2006) (recommendation of Mag. J.). That reasoning is persuasive. Such a mere reference is insubstantial and frivolous when there is no underlying federal claim asserted.

Another court, being "concerned that [a] passing reference to the Constitution [wa]s insufficient to support Federal Question Jurisdiction, conducted "a survey of cases on this issue and

gathered a number of analogous cases where similar passing references were found to be insufficient to support federal jurisdiction." *G5 Invs., LLC v. Harrison Square, LLC*, No. 3:18-CV-95-SA-RP, 2018 WL 2348664, at *2 (N.D. Miss. May 23, 2018). That court appended a lengthy footnote setting forth a number of supporting cases. *See id.* at *2 n.6. Highlights of those cases persuade the Court that a mere passing reference to federal law or the United States Constitution is insufficient to support jurisdiction under 28 U.S.C. § 1331.[2]

Additionally, the Fifth Circuit has held that a complaint alleging state-law torts with a passing reference that defendant's facility "was maintained in violation of federal regulations as well as in violation of state and local regulations" did not "suffice to render the action one arising under federal law." *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir. 2002). It has also held that "a reference in a petition regarding a violation of unspecified federal laws does not establish a federal claim." *Avitts*, 53 F.3d at 693.

In light of these Fifth Circuit decisions and the cited persuasive opinions, the Court finds the passing reference to 42 U.S.C. § 1983 insufficient to confer federal question jurisdiction over this case. Plaintiff clearly and unambiguously relies only upon the Texas Constitution for its due process claim. Even if there were some ambiguity, "any doubt about the propriety of removal must be resolved in favor of remand." *In re Hot-Hed Inc.*, 477 F.3d at 324. And to eliminate any thought

---

[2]*See Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1026-28 (10th Cir. 2012) (holding that passing mention of "the ADA and the Constitution" does "not pass jurisdictional muster" because it did not "satisfy the well-pleaded complaint rule, for purposes of demonstrating federal-question jurisdiction"); *Stein v. Am. Exp. Travel Related Servs.*, 813 F. Supp. 2d 69, 72 (D.D.C. 2011) (holding that passing "references to the Fourth Amendment" do not support federal question jurisdiction when the plaintiffs "have not pled any violation of the Fourth Amendment" and do not "seek any relief under the Fourth Amendment"); *Rossello–Gonzalez v. Calderon–Serra*, 398 F.3d 1, 10–11 & n. 26 (1st Cir. 2004) (holding that "allegations of violations of 'due process' and 'equal protection'" do not "present[ ] a claim under the Federal Constitution" because the complaint lacked any "explicit reference to the United States Constitution"); *Easton v. Crossland Mtg. Corp.*, 114 F.3d 979, 982 (9th Cir. 1997) (holding that "the mere reference of a federal statute in a pleading will not convert a state law claim into a federal cause of action if the federal statute is not a necessary element of the state law claim and no preemption exists"). The Fifth Circuit has also specifically cited that proposition in Easton with approval and noted the "district courts in this circuit also agree with this result." *Griffith v. Alcon Research, Ltd.*, 712 F. App'x 406, 408 n.7 (5th Cir. 2017) (per curiam) (citing cases).

that the Court may exercise supplemental jurisdiction over Plaintiff's state claims under 28 U.S.C. § 1367, that "provision is plainly inapplicable because, by its terms, it presupposes that the district court obtained supplemental jurisdiction over the state law claims via original jurisdiction over federal claims arising from the same case or controversy." *Avitts*, 53 F.3d at 693. Because Plaintiff has never asserted a federal claim in this action, this Court has "never had original jurisdiction over any of the claims in this action." *Id*. Consequently, there is no federal jurisdiction to supplement through § 1367.

For all of these reasons, the Court concludes that Plaintiff's complaint does not include any federal claim, jurisdiction under 28 U.S.C. § 1331 is lacking, Defendant's removal based on federal question jurisdiction is not proper, and this action should be remanded to state court. Because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), this Court does not lightly reach these conclusions. But the obligation to exercise a grant of jurisdiction is counterbalanced with the equally unflagging duty to refrain from acting in the absence of jurisdiction. And the Court is convinced, after a thorough review of the original complaint, that Plaintiff has stated no federal claim or cause of action to provide federal jurisdiction under 28 U.S.C. § 1331.

### V. CONCLUSION

Because the Court finds that Plaintiff does not include any federal claim in its complaint, jurisdiction under 28 U.S.C. § 1331 is lacking, and Defendant improperly removed this action based on federal question jurisdiction. Accordingly, pursuant to 28 U.S.C. § 1447(c), the Court **ORDERS** this case **REMANDED** to the 438th Judicial District Court of Bexar County, Texas, Cause Number 2020-CI-06894. In light of this jurisdictional ruling and remand, the Court **DENIES AS MOOT** *Plaintiff Mega Vape, LLC's Motion for Temporary Restraining Order* (ECF No. 3). Of course, such denial is without prejudice to Plaintiff pursuing a similar motion in state

11

court.

        **SIGNED this 22nd day of April 2020.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**